Thank you, Your Honor. Let me please the Court. I'd like to start by taking about 60 seconds to read an excerpt from the trial court decision that we agree with, or most agree with, because I think that leads us to the heart of the issue. What page? Page 31. The facts of this case would permit a jury to find that Defendant Parker violated decedent's constitutional rights. There was a need for the application of force as decedent disobeyed commands to show his hands and was advancing toward Defendant Thompson in an aggressive manner. However, the amount of force used was disproportionate to the threat. Decedent was only clothed in underwear and was only armed with a five and a half foot long stick. It is for the finder of fact to determine whether the stick constituted a deadly weapon. Although decedent ran at Defendant Thompson, decedent never raised the stick in an offensive manner, instead keeping it crossways across his body, quite similar to an image in Taser's manual indicating how to use a taser in such a situation. Defendant Parker, tangled in a tree and vines, heard Defendant Thompson yelling his name and Defendant Parker responded by shooting decedent before Defendant Thompson had even attempted to fire his taser. A jury could find . . . Well, no, actually he found that the evidence stated a Fourth Amendment violation. No. What he found was that the law was not clearly established. No, that's not what he found. Plaintiff's Georgia Constitutional bracket Fourth Amendment, closed bracket claim rises and falls with their Federal Fourth Amendment claim, not their qualified immunity defense, their Federal Fourth Amendment claim. That's his phrasing, Federal Fourth Amendment claim. For this reason, defendants are entitled to summary judgment on this State Fourth Amendment claim. Right, and that parenthetical is the only place in the decision where he says that there's no Fourth Amendment claim and it's clearly inconsistent with the rest of the decision. I know. This decision was written in seven days and there are arguments, there are statements that are inconsistent in the analysis of the State law claims that I plan on getting to in a minute. In several places, but here's the deal on this. Yes. What I'd suggest to you in the decisional path that at least I intend to follow, we have de novo review anyway. Yes. So trying to reconcile or sort out the conflicting parts of the district court opinions is pointless. Okay. The question is whether we believe it violates clearly established law. Correct. Well, we believe that Judge Murphy found that a jury could find that the use of force was excessive in this case. I understand, but that doesn't mean we should find that a jury could find that. That it was clearly established. If you're talking about individual defendant liability. Right. Well, there was no cross appeal on that issue. Yeah, but they defend the judgment on any basis. That's fine, Your Honor. We believe that the evidence as found when viewed in the proper light shows, number one, that the officers agreed this man was holding a stick, but he was not holding it or using it in an offensive manner. So you can't shoot until the stick is uplifted? That's correct.  I thought I'd written, and we had recently issued, I'm talking about this calendar year issued, an opinion that says if a guy's got a hatchet in his hand, you don't have to wait until it's uplifted. Well, that's an edge to weapon. Well, I mean, what's the difference? The difference is. If the object in the hand can do harm. Right. And we've held you don't have to wait until it's drawn back to do harm. Why doesn't that apply to a different object? You don't have to wait until he's about to hit you with it. Well, first of all, it's a jury question as to whether the object, if it existed at all, could do harm. Why is that a jury question? Because Georgia law says. Why is that a Georgia law issue instead of a Federal issue? It's a Federal claim we're talking about now. Well, to the extent that we're relying on the deadly force statute to show what's reasonable and what's not reasonable. Which deadly force statute are we talking about? I'm sorry. The self-defense statute with regard to the Georgia claims. Yeah, but you don't. I'm sorry. Okay, Georgia claims. I understand that. But I thought we were talking about the Federal claims. We need to talk about the Federal claims. We do. Because Georgia, your position in Georgia is made more difficult by the fact that you have to show actual malice on the Georgia claims. You don't have to show what I understand to be actual malice in Georgia on the Federal claims. That's correct. But let me show you what Judge Murphy said about that. Which we've already decided we're going to review that de novo. Well, I think it's a fair point that I can cite in support of my position. He says on page 50, whether Parker has official immunity determines on whether the shooting was justified. Per the court's discussion, supra, section 3, there remains a question of fact regarding whether Defendant Parker was justified in using deadly force to stop the scene, i.e., whether he acted with an actual intent to cause injury. Therefore, for purposes of summary judgment, Defendant Parker is not entitled to official immunity. How can you say that somebody fired a weapon at somebody five times and didn't like and didn't have an actual intent to cause injury? I agree. No, you don't agree because the judge said that's a jury issue as to whether he had an actual intent to cause injury. You can't agree that if you fire a weapon at somebody five times, it's a jury question about actual intent to cause injury. The Georgia statute has to mean something other than that. If it didn't, when somebody was firing shots at a police officer, started firing shots at a police officer, a police officer would lack official immunity if he fired back because he has an actual intent to cause injury. Well, under Georgia law, which I spent quite a bit of time dealing with, the idea of actual malice and specific intent means two different things in the context of the underlying tort claim versus the official immunity claim. For official immunity claim, there has to be a subjective intent to injure or cause a wrongful act. The legitimate use of force for self-defense under Georgia law is not considered to be malicious, even though it's a volitional act. It's done for the good faith purpose of defending oneself or defending others. Under Georgia law and under Kid v. Coates and other cases by our Georgia Supreme Court, if the jury finds that this was self-defense, then it's not actual malice. But if the jury finds that it's not justified, then there is official immunity. Here's the problem in trying to reconcile inconsistent language in the opinion. I believe this may just be a cut and pasting error where he copied. You're defending the district court's decision again. Our review is de novo. Okay. You don't have to undertake the explanation of why he contradicted himself. Well, I do say that in support of my position, the fact that he spent six or eight pages talking about why there's a jury question as to whether it's excessive force, that that can be read as showing that there's a Fourth Amendment violation. The one parenthetical where he's talking about the state excessive force claim that's inconsistent with everything else, the opinion should probably be disregarded. But here's why a jury could find that it was excessive force and why it's a Fourth Amendment violation. Both officers admit the weapon wasn't waived. There's even a question as to whether it was there at all. If you'll recall the audio recording, nobody says anything about a stick until the 60 seconds of dead silence after the shooting when one of the officers says, yeah, he was trying to hit me with that stick. And the commands you hear on the audio recording are, show me your hands, show me your hands, show me your hands. And if somebody's holding a stick, you don't say show me your hands because you can see they've got a stick in their hands. You say drop the weapon, drop the stick. Unless it happens quickly and you're afraid he's about to hit you with it and you're excited and you're not thinking, how can I best articulate this thought? That's good. That's why we have juries and a jury needs to make that decision. That's why we have deference to law enforcement and those kind of situations subject to certain limitations. Right. But what we've got here is we've got testimony by officers, the credibility of which is called into question by physical evidence. Wait a second. We found a stick. A stick. A stick was found. We found four pieces of a stick. We found four pieces of a stick. And so really what you're hanging your hat on as to whether there may or may not be a stick is the fact that in the heat of the moment, when he was charging the deputies, the deputies did not mention the stick. That's not the only thing we're hanging our hat on. What else supports a justifiable inference that he never had a stick? The fact that they said the stick was two feet long and the stick that was recovered after the fact was in fact five and a half feet long. The fact that the commands said no mention of a stick before the shooting. But even if it was a stick. So wait, let me just make sure that I understand and answer to my question. What evidence do you have that would support a justifiable inference he didn't have a stick? Is that they didn't mention it in the heat of the moment on the tape during the incident when they're being charged and that their description of the stick, and a stick was found, didn't match exactly the stick that was found. That is what supports an inference he didn't have a stick. What else is there? Well, there's not anything else. However, even if he had a stick, that doesn't end the inquiry. The law is currently established by recent decisions of this court. I mean, you've got cases where somebody's holding a gun in their lap and they're not making any threatening move with the gun. But not making any threatening movement with a gun. This man was charging while holding a stick. How is that not a threatening move? Well, how did he get bullets in his back? There were three shots that hit him. They all were a backward to forward trajectory. Two in the back and one was in the thigh as he was turning to leave. So, a jury could find that he was actually fleeing. I thought that was where Parker, the officer who fired the weapon, was in relation to the events that took place. Well, that could be, a jury could find that. I didn't think there was any dispute about that. Well, there's no dispute because there are no other witnesses who lived. But that often happens. That's correct. During deadly force. But we've never said the three officers on the scene or the five officers on the scene were all testified that the man had the knife and was charging them. But he's not there to contradict him. Therefore, there's a jury issue. We've never held that. Well, there's a really great concurring decision in Slater v. U.S. Steel Corporation where the chief judge of this court said that the court is not required to accept a party's testimony even if uncontroverted if there are credibility issues. And here we have credibility issues. That is at trial. That is not in summary judgment. If it were, you would never have summary judgment. Whoever the witness was that was the basis in the affidavits of the deposition that was the basis for summary judgment, you would always say, well, if it goes to trial and the jury actually hears him, the jurors can disagree. That's an unusual point, but it's a point that the whole summary judgment regime depends upon. Well, I did cite cases from other circuits say that when there is a witness who's dead, he might have a different viewpoint. That needs to be taken into consideration as part of the totality of the circumstances. But we, even accepting Judge Murphy's finding that there was a stick and that he did charge him with the stick, the real error here is that he failed to find that that violated clearly established law. As presently constituted in the circuit. The Turk case, Turk, which was not cited in our brief, which came out later, but involved a shooting which had occurred prior to the shooting in this case. This court held, first of all, that the law was clearly established by the Mercado case in 2005, which Judge Fay participated in. Judge Corns, you participated in the Wieland case, Wieland versus Palm Beach County Sheriff's case, which was also cited in the Turk case. Both of those involved compliant decedents or compliant victims of the force at that time. But you've gone over, we'll give you a full three and reply, but let's hear from Mr. Rodman now. Thank you. May it please the court. Deputy Parker should not be denied qualified immunity based on fiction or fantasy. But that's exactly what plaintiffs are asking this court to do. In this case, Wilson, who was acutely intoxicated by methamphetamine and was armed with a five and a half foot stick, charged Deputy Thompson and was within eight to ten feet of Deputy Thompson when Deputy Parker fired his gun. Under these circumstances, Deputy Parker's use of deadly force was objectively reasonable. Agent Sims, the crime scene specialist, I guess he was, testified the stick could have caused serious bodily injury or death, didn't he? He did. Didn't he also testify that when you picked it up, it fell in four pieces? He did. How are those two statements consistent? Deputy Parker testified that when Mr. Wilson fell on the stick, that it broke. That doesn't sound like a stick that would inflict serious bodily injury or death if it breaks into four pieces when you fall on it. Well, that would not have been noticed until after the shooting. That's your better argument. But still, Sims should have been more careful about his testimony that it could have caused serious bodily injury or death instead of saying it could have appeared to a reasonable person that it might have caused death or serious bodily injury. Is the stick in a box somewhere, the four pieces of it? It is in a bag. Was it introduced into evidence? It is an exhibit to Agent Sims' deposition, but it has remained in the custody. As they always do. Of the Bartow County Sheriff. It's been in an evidence room at the Sheriff's Department for two years. Two and a half years now. Actually, almost three years. Thank you, Judge. None of the facts that we're facing, Deputy Parker, is disputed by actual evidence. Notably, the quote from the district court opinion that plaintiff read, you know, the judge said there was a need to use force. But here are considerations that a jury might have used to find the force used was disproportionate. Plaintiffs are going even farther back and saying Wilson wasn't even a threat to Thompson at all. And so we're dealing with two very different analyses of the facts of this case. When frankly, as we argued in our brief, the facts of this case support, only support a finding that there was no constitutional violation. Any reasonable officer in Deputy Parker's position could have believed that Wilson had an object that caused harm. He was charging at another officer. He was close in proximity to that officer. So a reasonable officer in Deputy Parker's position could reasonably conclude he's attacking the other officer. I need to use force to stop it. And that's exactly what he did. Thompson had a firearm as well. He didn't. He had a firearm, but he had his taser drawn. Yeah. And he testified in his deposition he didn't have time to transition from taser to firearm. He also said, I believe on the tape afterwards when he and Parker were discussing it, that the reason he didn't fire his taser was it happened too quickly. Am I wrong about that? I think he even used the word he froze. Okay, but he didn't say, I thought about it and I was concerned only one taser would go in him, or one prong would go in him. He did not state that on the recording. He stated that later. He stated that in his deposition. So what do we do with that? The jury finds that the facts, or a reasonable jury could find that the facts or whatever is less favorable to him about that, right? Correct. Couldn't they find also that both of them were false because they contradicted each other? On which point? Well, they could say, look, he said in one place that the reason he didn't do it is he froze. He said in another place it happened too quickly. He said in a third place that he was concerned that only one prong would go in. They can't all be true and therefore none of them are true. Well, the problem with that is that makes the reasonableness of Parker's use of force dependent on Thompson and his conduct or failure to take action. Yeah, I didn't see that argued as forcefully as I would have argued it in your brief, but that is true. Regardless of why Thompson didn't do it, Parker was still confronted with the same situation. Correct. And so, you know, trying to pass blame on to Thompson, I mean, that's inconsistent with the Supreme Court's Mendez decision, I believe. And so, again, that doesn't change the calculus that Deputy Parker has to run through his mind in the heat of the moment. On a clearly established issue, Your Honor, correctly mentioned that in cases like Turk that the suspects had not made any offensive movements towards the officers. And in this case, there is no reasonable view of the facts where it can be said that Mr. Wilson did not make an offensive move towards Deputy Thompson. The Weiland case was also here in this Court on an appeal from a order granting a Rule 12b-6 motion. So that just dealt with the adequacy of the complaint's allegations and did not deal with the substance of the claims that were asserted. On the Georgia immunity issue, actual malice is malice in fact, which is not an objective standard. And so, courts are going to have to find that Deputy Parker shot Mr. Wilson knowing he was unjustified in doing so. As opposed to with the intent to cause injury, which some of the decisions say, but it can't be correct, right? I agree. I agree that that can't be correct. And there's no evidence in this case that Deputy Parker had that intention when he fired. Because Parker, for example, never made any inconsistent statements, at least none that are pointed out in the brief. Any inconsistent statements were by his partner as opposed to by Parker, correct? I think so. If there were any inconsistent statements, it may have been to the length of the stick. Well, I thought we had just talked about inconsistent statements that were made concerning why the Taser wasn't fired. Correct. He had no idea why the Taser wasn't fired. All he knows is that he heard Deputy Thompson yell, Anthony, Anthony, Anthony. And that said to him, Deputy Thompson's in trouble. I need to do something. The plaintiff's ADA claim hasn't come up today in argument. I don't know if the court has any questions on the ADA claim. One more question for your brother there, but I'm not aware of it. I didn't see in the brief any, at least any court of appeals decisions that holds that the ADA or the Rehab Act applies to police use of force circumstances in cases. Am I wrong about that? I am not. I've not found one. I mean, the language, the text says excluded from participation in or denied the benefits of the services, programs, or activities. That just doesn't seem to fit. Now, in the Burkle decision, you know, this court said, well, or otherwise discriminates on the basis of disability. And this court laid out an inquiry for the possible application of ADA there. I mean, if you're an ADA or rehab claim against these individual defendants, you clearly have qualified immunity because nobody's ever held it applies. But you can't have those two statute claims against an individual because they talk about the employer. Right. They are only asserted against them in their official capacities. For that reason. The district court didn't pass on our arguments that on this record, plaintiffs can't even show that the sheriff would be liable in this situation. I mean, it just hasn't shown the deliberate indifference or intentional discrimination necessary to do that. If the court has no further questions, then I will. We don't. Thank you. We'll take that under consideration. Mr. Jones, you have three minutes. Thank you, Your Honor. The trial court says this, and I'm using this to support a point I'm about to make. He says a jury could find that deadly force should not be used against a nearly naked person only armed with a stick when that stick has not been raised in an offensive manner and the other officer has not even attempted to deploy his readily available less than lethal means of force. That authorizes an inference that you got one officer who doesn't even see the need to use his taser, let alone to draw a firearm, and another officer who makes the decision to use deadly force. You're assuming he didn't see the need as opposed to he froze or didn't think the taser would work or whatnot. Correct, and I believe that's a credibility determination that the jury needs to make. So if the first officer doesn't defend himself, the second officer can't use deadly force to defend the first officer no matter what. They both have a duty to use appropriate force. I know. And reasonable minds can disagree on what that appropriate force is. But if the first officer doesn't use any force, then the second officer can't use any force. Is your position, is it not? That would be a different inference could be drawn. But we're only entitled at this juncture to inferences that are favorable to us. They're not entitled to inferences that are favorable to them. Yeah, but what I'm saying is I heard you arguing. If you're not, I understand you don't have to argue it. But I heard you argue that if the first officer doesn't use any force, no force is appropriate for the second officer to use. I think an inference can be drawn that if one officer doesn't see the need for using deadly force, then another officer, you could question, a jury could question whether the other officer reasonably perceived the need to use deadly force. Or whether he actually made a mistake. And that's independent of the facts that the second officer saw. I mean, the guy's coming towards the first officer with a knife and the first officer doesn't do anything. That's a different case. This is a stick. We do have a case where a subject had a knife, didn't attempt to threaten anyone with it, and was considered a suicide threat and he was shot. He was sitting in the floor and the knife was in the floor, was he not? Yes. When I was here before, you had suggested that those were compliant subjects in those cases. And this is a non-compliant subject. But the use of deadly force is not going to turn on compliance. You can't kill somebody just because they're non-compliant. So the distinguishing fact in those cases... The controlling principle is you can't kill somebody who is compliant. And the reason I suggested that is that explains those other decisions that you're citing. In each of those cases, the suspect, sometimes had been non-compliant before, but at the time of the infliction of deadly force, was compliant. Well, I think it depends on how you define compliant. But the mere fact of non-compliance, failing to obey an order which you may not even understand, in and of itself is not going to be a justification for deadly force. I define compliant as not advancing on a law enforcement officer with a weapon or not threatening an officer with a weapon. And I would respectfully submit that the salient factor in those cases is the fact that the weapon is not being raised. No threat is being made with the weapon. It's not being used in an offensive manner. And if that's the case, if the jury finds that that is the case, then the law is clearly established you can't use deadly force. Thank you, counsel. We'll take that case under submission. Next case up is Abdur Rahman et al.